OTTO H. WACHTEL, Respondent, *v.* A. R. MOSLER & COMPANY, Appellant.

First Department, February 11, 1921.

**Principal and agent — employment of salesman on commission within restricted territory — when sale not made within territory.**

A salesman's contract for compensation by way of commissions on sales made within specified territory does not entitle him to commissions where none of the goods which were the subject of the sales for which commissions are claimed were to be used within the specified territory, but in a foreign land and all negotiations were carried on outside the territory specified, although the formal contract was signed within the territory after half the goods were delivered, and the purchaser under its rules exercised the right of inspection through one of its agents during the manufacture.

SMITH, J., dissents.

APPEAL by the defendant, A. R. Mosler & Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of February, 1920, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 19th day of February, 1920, denying defendant's motion for a new trial made upon the minutes.

*Frederick W. Sperling*, for the appellant.

*William Rand* of counsel [*Frank J. McMann* with him on the brief; *Jerome, Rand & Kresel*, attorneys], for the respondent.

GREENBAUM, J.:

Plaintiff was a salesman in the employ of the defendant which was a corporation engaged in the manufacture of spark plugs for automobiles. The only sales involved are two war orders for spark plugs received by the defendant in 1917 from the United States War Department for the United States expeditionary forces in France. It is undisputed that the sales were procured by the defendant and not by the plaintiff. It is also undisputed that the plaintiff would be entitled to the commission notwithstanding that the defendant procured the orders, provided these sales are to be deemed as made

within the territories mentioned in the written contract between the parties.

The question is whether the sales in dispute were in plaintiff's territory, within the meaning of the contract. The agreement, so far as material, reads as follows: " We employ you as our salesman in New York City and in New Jersey as far as Trenton (not included); Westchester County as far as Peekskill, N. Y. (not included); Jersey coast as far and up to Atlantic City (not included); Long Island, Brooklyn, Staten Island, and such other territories where from time to time we may request you to go. Compensation shall be at the rate of 10% commission on all sales made by you or by us in your territory above mentioned, when shipped and paid for * * *. No manufacturing business, jobs, special brands or export orders shall apply in the above figures."

The circumstances under which the orders were procured are not in dispute and were substantially as follows: On August 10, 1917, the defendant, whose factory is located in New York city, received a letter from the War Department, Quartermaster-General's office, Washington, D. C., requesting quotations on certain kinds of spark plugs, price " F. A. S.," New York, properly crated for export shipment, and asking that replies be addressed to Quartermaster-General, Washington, D. C., attention of Capt. H. A. Hegeman, who was the regular army officer in charge of the department.

Thereupon the defendant's sales manager, a Mr. Fisher, after phoning to Washington and making an appointment, went to Washington with Mr. Mosler, defendant's vice-president. They prepared samples and figured out prices on a special schedule, and after a conference at the Quartermaster-General's office at Washington, defendant wrote a letter in the form of a quotation or bid addressed to the Quartermaster-General at Washington, dated August 14, 1917, and thereafter submitted it in person in Washington to one Captain Barndollar, who had charge of this particular order and with whom they went over the requirements of the War Department for the spark plugs in question. Upon Captain Barndollar's request they amended the bid and prepared a new bid in the form of a letter dated August 16, 1917, also addressed to the

Quartermaster-General at Washington and submitted it then and there to Captain Barndollar. Captain Barndollar stated that the government wanted some extra gaskets and as a result of communications that passed between plaintiff and the officials in Washington an additional order of comparatively small amount was given. On August 22, 1917, Mr. Fisher, the defendant's sales manager, saw Captain Barndollar at Washington and went over in detail the different types of plugs required. Captain Barndollar selected the precise types he wanted, decided upon the quantities and fixed the prices. He thereupon dictated a letter dated August 22, 1917, which is defendant's exhibit " A " set forth in the printed case on appeal.

It will be seen by reference to that letter that the New York quartermaster was directed to purchase from the defendant the goods specified in the quotation, in the quantities and at the prices stated in the letter and to execute an agreement as set forth therein, which thereafter was signed by the local quartermaster in New York pursuant to the exact details and in accordance with the direct and positive instructions of the Quartermaster-General's Department.

It also appears that after the letter had been prepared at Washington to be sent to the New York quartermaster, Captain Barndollar stated to Mr. Fisher: " I guess this is the biggest order you ever pulled off. * * * Now go back to New York and get busy," and he handed Mr. Fisher one of the copies of the letter. He also told Mr. Fisher that the reason the letter was sent to the New York quartermaster was because his corps would have to supervise inspection at the defendant's factory which was in the district covered by that department.

Thereafter one Captain Kelsey, who was connected with the quartermaster's corps in New York city, from time to time visited the factory and made inspections for the purpose of ascertaining whether the goods were being properly prepared. The goods were delivered in four separate installments, all directed free alongside the army transports at Hoboken, N. J., and boxed for export shipment marked, " Base Quartermaster, Expeditionary Force, France."

The formal contract as matter of fact was executed in

New York in November, 1917, after about one-half of the merchandise had already been shipped. It also appears in evidence that Captain Kelsey stated that the New York quartermaster was only permitted on his own authority to make purchase of supplies for New York for the running of his office and that if an order exceeded $100 it was necessary to obtain authority to purchase from Washington. It was conceded on the trial that the two transactions in question were not " manufacturing business, jobs or special brands," as those words were employed in the contract between the parties, and that they were not " export business " within the meaning of the contract. The court directed a verdict in favor of the plaintiff upon the theory that the sales in question were made within the exclusive territories granted to the plaintiff under the contract.

We cannot agree with the conclusions reached by the learned trial justice. The spark plugs which were the subject-matter of the government contracts were not intended for use in any of the territories named in the contract between the parties. It was expressly agreed in the government contract that the goods were to be delivered " free alongside the transports at Hoboken, New Jersey," and boxed for export shipment, marked "Base Quartermaster, Expeditionary Force, France." Nor can there be any question that the sales of the spark plugs were made in Washington, D. C. The mere circumstance that under governmental regulations the formal signing of the contracts was performed by the New York quartermaster did not make the sale a New York sale. Every detail of the contracts had been agreed upon in Washington and the New York quartermaster was a mere instrumentality, carrying out the directions of the Quartermaster-General's Department· in Washington.

The judgment and order must be reversed, with costs, and judgment is directed in favor of the defendant, with costs.

CLARKE, P. J., DOWLING and PAGE, JJ., concur; SMITH, J., dissents and votes for a new trial on the ground of exclusion of competent testimony.

Judgment and order reversed, with costs, and judgment ordered in favor of defendant, with costs.